## 59980. TAYLOR v. GREINER et al.

BIRDSONG, Judge.

In their suit below, the appellees Greiner and Giddings alleged that the defendant had maliciously and with ulterior motive instigated investigative and disciplinary proceedings against them by the State Board of Medical Examiners. They contend that the defendant Taylor, an attorney, demanded a settlement for his client in the form of a debt forgiveness from Greiner, a physician, and Giddings, the social work counselor to whom Dr. Greiner had referred Taylor's client; and further, that in the settlement demand letter Taylor threatened to instigate investigatory and disciplinary proceedings against both Giddings and Greiner if they refused to mark the bill satisfied in full and return to Taylor's client an amount she had already paid. The letter written by Taylor to Greiner and Giddings questioned the legal authority and medical ethic by which Mr. Giddings with a master's degree in social work could hold himself out as offering medical services of any kind, "and particularly in consort with a medical doctor." The letter continued "I assure you that a complete investigation of this affair will be made through the State Medical Board, Investigative Bureau, etc. unless you can show

me by what license this treatment and billing procedure is authorized by law. As an alternative, I am authorized by [my client] to drop the entire matter provided the current billing of $570.00 is dismissed, marked satisfied in full, and a return of the $256.00 is made so she may reimburse Blue Shield."

This letter was written April 10, 1975. The plaintiffs allege that in January, 1976 the defendant Taylor furnished certain information to the Georgia Composite State Board of Medical Examiners and requested an investigation which resulted in disciplinary proceedings being filed against the plaintiffs; but on May 6, 1976, these proceedings were dismissed by the Board of Medical Examiners. The plaintiffs filed their lawsuit below on May 1, 1978. The defendant Taylor moved for summary judgment and was denied the grant. *Held:*

1. On appeal, Taylor argues that if the appellees' petition alleges malicious abuse of process, it came too late because the "abuse" occurred in January, 1976, when the defendant furnished information to the Board of Medical Examiners and requested the investigation which resulted in the disciplinary proceedings; appellant further argues that if, on the other hand, the petition alleges a cause of action for malicious use of process, the cause of action is insufficient because it does not allege the appropriate special damages. We agree.

We observe that an action for malicious abuse of process must be based on process legally and properly issued against a party, but wrongfully and unlawfully for a purpose the law did not intend; i. e., the lawful process is abused. *Brantley v. Rhodes-Haverty Furn. Co.,* 131 Ga. 276 (62 SE 222). Hence, the process need not have terminated in the party's favor so as to constitute the cause of action, and it would be anomalous to say that it should first terminate in the party's favor. We deem it logical, then, that in actions for malicious abuse of process the cause of action arises when the abuse occurs, and not when the proceedings terminate in the party's favor. If the petition had alleged malicious abuse of process in this case, it came too late.

2. The action for malicious *use* of process is based on a process which is itself instituted and prosecuted with malice and without probable cause and which, in vindication thereof, terminates in the party's favor. *Brantley,* supra, p. 281. If this were a complaint for malicious use of process, it would not be barred by the statute of limitations, because the suit was filed within two years of the termination of the proceedings in the plaintiffs' favor on May 6, 1976.

It was stated in *Jacksonville Paper Co. v. Owen,* 193 Ga. 23, 25 (17 SE2d 76) that a cause of action for malicious use of process arises only when " 'the person of the defendant was arrested or his property

attached, or some special damage was done to him.' " See also *Pair v. Southern Bell Tel. &c. Co.,* 149 Ga. App. 149 (253 SE2d 828). In 1885 the Georgia Supreme Court wrote that "since the passage of the [1784 Act], in order to maintain the action, it must be shown that the defendant maliciously sues the plaintiff either with *intent* to imprison him or *do him some special prejudice.*" (Emphasis supplied.) *Mitchell v. Southwestern Railroad,* 75 Ga. 398, 405. See also *American Wholesale Corp. v. Kahn,* 42 Ga. App. 411 (156 SE 324); and see the results in *Slater v. Kimbro,* 91 Ga. 217, 221 (18 SE 296), and *Haverty Furn. Co. v. Thompson,* 46 Ga. App. 739, 740, 742 (169 SE 213). Today, however, and since at least the case of *Woodley v. Coker,* 119 Ga. 226, 228 (46 SE 89), the expression of the law is that an action for malicious use of process will lie only where the person of the defendant was arrested or his property attached, or he suffered some special damage by reason of the suing out of the process. *Jacksonville Paper Co.,* supra; *Woodley,* supra. While we do not doubt that the plaintiffs' professional licenses and right to pursue their professions are valuable property rights (*Muse v. Connell,* 62 Ga. App. 296 (8 SE2d 100)), they have not shown that any material issue of fact remains that their right to follow their professions was actually denied or attached, or that they were arrested. They show no special damage except that which normally results from all proceedings prosecuted as lawsuits or administrative hearings. See *Jacksonville Paper Co.,* supra; *Swain v. American Surety Co.,* 47 Ga. App. 501 (171 SE 217). The plaintiffs therefore have no cause of action for malicious use of process in this case.

3. The plaintiffs contend further that their complaint establishes a cause of action for malicious interference with property. *Southern R. Co. v. Chambers,* 126 Ga. 404 (1) (55 SE 37); *Dale v. City Plumbing &c. Co.,* 112 Ga. App. 723 (146 SE2d 349); and see especially *Muse v. Connell,* supra. We said in *Dale v. City Plumbing &c. Co.,* supra, at p. 727, that " 'the right to conduct one's business without the wrongful interference of others is a valuable property right which will be protected . . . [a]nd the enjoyment of the good name and good will of a business is likewise a valuable property right . . . One's employment, trade or calling is likewise a property right and the wrongful interference therewith is an actionable wrong. [Cits] . . . .' " In *Muse v. Connell,* supra, p. 303, we held that "[t]he right to follow one's profession, business, or occupation, or to labor, is a valuable property right, protected by the constitution and laws of this State . . ." While we do not question the right and obligation of citizens to call to account members of professions who abuse their professional trust, or the law, that right and obligation must be based on probable cause and not motivated by a malicious or extortionate

intent. As we said further, in *Dale,* supra, " '[a] person's business is property in the pursuit of which he is entitled to protection from *tortious* interference by a third person, who, *in interfering therewith, is not acting in the exercise of some right.*' " *NAACP v. Overstreet,* 221 Ga. 16 (142 SE2d 816). (Emphasis supplied.) Whether the appellant in this case tortiously interfered with the plaintiffs' property rights, or was acting in the exercise of legal right and without tortious intent, is a question of fact for the jury. Since what is involved is a property right, the plaintiffs had four years in which to bring their action. *Dale,* supra, p. 728; *Muse,* supra, p. 303; Code Ann. § 3-1002, and their case is therefore not barred by the statute of limitations.

We find no merit in appellant's contention that to maintain this cause of action the plaintiffs must show special damages. In *NAACP,* supra; *Dale,* supra; and *Muse,* supra, the plaintiffs apparently did show "special damages," but this does not necessarily mean they would have had no recourse otherwise. It would be a gross anomaly, and would utterly defeat a plaintiff's right to protection from tortious interference with this type property if we held that it is only where the defendant actually succeeds in his intent that the plaintiff can recover. In an analogous situation, although it did not deal with interference of the right to follow a profession, the Supreme Court in *Slater v. Kimbro,* supra, p. 221, remarked that the dispossessory warrant which the defendant had sued out against the plaintiff "was aimed at her possession, and would have deprived her of it had she not given . . . bond and security. . . It failed to expel her from the premises but it brought her possession into imminent peril, and forced her to give bond and security as the price of preserving it. Had she not paid this price, she would have been expelled, and the groundless and malicious proceeding would have been triumphant. It did triumph so far as forcing her into making a bond. . . Had she failed to avail herself of this alternative, and if she had been turned out . . . in consequence, no one can doubt that she would have had a cause of action for the special damage occasioned thereby. . . Shall she recover nothing because she rendered their unfounded and malicious proceeding as harmless to herself, and consequently to them . . . instead of leaving it to work all the mischief which they intended?" Having so said, the Supreme Court, feeling compelled to find special damages in that case of malicious use of process, found them in the circumstances of the wrong done to the plaintiff. Should we rule in this case, assuming the defendant did as alleged tortiously interfere with the plaintiffs' property rights, that the plaintiffs have no cause of action because the disciplinary actions terminated in their favor and therefore the interference did not ultimately succeed? If what the plaintiffs allege is true, we think that as in *Slater,* supra,

the proceedings against the plaintiffs "did triumph so far as forcing" the plaintiffs to defend a groundless and malicious action calculated to interfere with their right to follow their professions. The plaintiffs have a cause of action for this injury. Georgia law provides that the law presumes that damages flow from any tortious act. Code § 105-2006; *Flanders v. Daley,* 124 Ga. 714 (52 SE 687) (8 EGL Damages, § 7-8 (1978 Rev.)). In *Ellington v. Bennett,* 59 Ga. 286, 287 (1), it is pointed out that Code § 85-1803 provides that " 'for every injury done by another to person or property, the law gives a right to recover, and a remedy to enforce it.' " In all suits based on a contract, where there is no bona fide controversy or reasonable cause for the defense or if the defense was conducted in bad faith, the plaintiff may recover the expense of the litigation he was forced to bring. Code Ann. § 20-1404; *Third World Ltd. v. Brewmasters,* 155 Ga. App. 352 (270 SE2d 891) (1980); *Georgia-Carolina Brick &c. Co. v. Brown,* 153 Ga. App. 747, 753-755 (266 SE2d 531); and see *Ken-Mar Construction Co. v. Bowen,* 245 Ga. 676 (266 SE2d 796). Why should a defendant in a suit which was not only groundless but malicious to boot, and which was brought against him precisely to cause him at least the trouble of defending it, not only be without recompense for this injury, but be unable even to recover the general damages which the law presumes flow from any tortious act? Accordingly, we hold that questions of fact remain and that the defendant appellant was not entitled to summary judgment in the case, and the trial court was correct in so ruling.

*Judgment affirmed. Quillian, P. J., McMurray, P. J., Shulman, Banke and Carley, JJ., concur. Sognier and Smith, JJ., dissent. Deen, C. J., concurs in the judgment only of the dissent.*

ARGUED JUNE 2, 1980 — DECIDED DECEMBER 3, 1980 —

*James S. Owens, Jr., Robert L. Goldstucker, Ross Arnold,* for appellant.

*Morton P. Levine, Stephen H. Block,* for appellees.

SOGNIER, Judge, dissenting.

I respectfully dissent. The essence of this action is malicious use of process. Plaintiffs below, appellees here, were the subject of a complaint to the State Board of Medical Examiners made by the appellant, a lawyer acting on behalf of a client. Proceedings were conducted by the State Board of Medical Examiners which resulted in the Board dismissing this complaint against plaintiffs. Appellees

then filed this action, alleging that the complaint to the State Board was malicious, without probable cause and maliciously continued by the appellant even after his client wished to settle the matter. Appellant's motion for summary judgment was denied and he appeals, contending, among other issues, that appellees suffered no arrest of their person, seizure of their property or such special injury as to authorize recovery for malicious use of process.

The initial question is whether a complaint to the State Board is a use of process. In *Dixie Broadcasting Corp. v. Rivers,* 209 Ga. 98, 105 (70 SE2d 734) (1952), our Supreme Court held that the Federal Communications Commission, while not strictly a court, has quasi-judicial powers. Thus, a cause of action for malicious use of legal process may be predicated upon the prosecution of an administrative proceeding. The proceeding before the State Board of Medical Examiners is analogous.

Our Supreme Court has also held that in order to recover in a suit for malicious use of civil process, it must be shown that such process caused either (1) an arrest of the person or (2) seizure of property, or (3) other special injury. *Mitchell v. Southwestern Railroad,* 75 Ga. 398 (1885); *Jacksonville Paper Co. v. Owen,* 193 Ga. 23 (17 SE2d 76) (1941); *Pair v. Southern Bell Tel. &c. Co.,* 149 Ga. App. 149 (253 SE2d 828) (1979). In *Jacksonville Paper Co. v. Owen,* supra, p. 25, the court, referring to an earlier Court of Appeals decision (*Swain v. American Surety Co.,* 47 Ga. App. 501 (171 SE 217) (1933)), said: "In the *Swain* case, supra, the Court of Appeals, we think correctly, ruled: 'No damages are recoverable for a malicious use of process where the defendant's person or property is not seized and he sustains no damage as a result of the institution of the suit, except such as necessarily results in all suits prosecuted to recover in like causes of actions . . . Expenses incurred by the defendants in making preparations to defend the suit, including traveling expenses, hotel bills, printing, and other expenses for this purpose, employing attorneys to defend the suit, and damages for embarrassment, mortification, humiliation, and being "held up to public scorn and ridicule," are expenses and damages resulting from the institution of all suits prosecuted to recover for like causes of action, and do not constitute any special damage or injury not necessarily resulting from the prosecution of the suit for like causes of action.' " Each appellee, at the time of taking his deposition, was asked what his damages were; each replied that attorney fees, time and money, trouble and expense involved in the hearing constituted the damages. They were unable to expand further on any special damages suffered.

The majority cite *Muse v. Connell,* 62 Ga. App. 296 (8 SE2d 100) (1940) as authority for the maintenance of the instant suit, claiming

that the court in that case recognized a claim for the invasion and interference with a property right (plaintiff's job). In *Muse* the plaintiff contended that he was entitled to be promoted to a vacancy created when an employee resigned. This entitlement was appealed and litigated within the union rules. In *Muse,* plaintiff's foreman allegedly inserted into the record malicious, false and fraudulent statements resulting in the plaintiff's loss of the difference between what he would have earned had he been promoted to the vacant position and the amount he then received as a substitute. Therefore, in *Muse* the plaintiff showed special damages. The case was an action in tort and did not specifically state a claim for malicious use of process. Rather, the conduct was interpreted as a tortious interference with plaintiff's job. Aside from this factual distinction, in the instant case no direct damages in the nature of special injuries have been shown by either plaintiff. Damages as alleged and as contained in appellees' deposition refer only to those damages which are suffered in common by all who must defend an action.

*Dale v. City Plumbing & Heating &c. Co.,* 112 Ga. App. 723 (146 SE2d 349) (1965) is also cited by the majority as authority for the maintenance of the instant suit. The defendant in *Dale,* upon the refusal of the plaintiff to enter into a particular contract and to pay for certain materials, filed false affidavits and materialman's liens against property on which nothing was owed to the defendant for the purpose of deliberately destroying the earning capacity of the corporation and plaintiff, its sole owner. The action was a claim in the nature of malicious *abuse* of civil process. It was contended that the claim could not be interpreted as malicious use or abuse of process because such a lien is not process in its technical sense. In response this court cited *Defnall v. Schoen,* 73 Ga. App. 25 (35 SE2d 564) (1945), a case dealing with dispossessory warrants where a cause for abuse of process was stated. The court in *Dale* said it need not decide if a claim for malicious use of process was set out because the malicious injury to the business of another gave a right of action to the injured party. *Southern R. Co. v. Chambers,* 126 Ga. 404 (1) (55 SE 37) (1906). Nevertheless, in *Dale* special damage to plaintiff's business was involved, rather than loss of time, attorney fees and expenses suffered in common by all who must defend an action.

*NAACP v. Overstreet,* 221 Ga. 16 (142 SE2d 816) (1965) cited by the majority involved a matter of mass picketing with intent to destroy a business and I do not deem it applicable. Nevertheless, compensatory damage for lost business was proven and awarded.

In both *Muse* and *Dale* the court recognized that one's business or employment may suffer damages by tortious interference therewith, but in each case special injury or damage to a property

right was shown. Special injury or damage to property was not shown in the instant case. *Slater v. Kimbro,* 91 Ga. 217, 221 (18 SE 296) (1892), referred to in the majority, did allow recovery of counsel fees but it was in conjunction with the proof of special damages and involved, to say the least, an attempted seizure of her property, her tenancy by dispossessory warrant, which necessitated posting of bond in order to defend on the merits.

The majority, in order to permit this suit, label it tortious interference with one's business and find a question of fact exists as to the plaintiffs' rights to general damages, as general damages are presumed to flow from any tortious act. Has not this presumption been rebutted by the plaintiffs' own testimony citing as their *only* damages attorney fees, time and money, trouble and expense involved in the hearing?

To permit a party under any label to maintain a suit for malicious use of process for the ordinary damages incurred in defending a lawsuit could only result in further litigation by the defendant against the unsuccessful plaintiff. The ultimate result would be to discourage free access to our courts for fear of incurring a subsequent suit. To permit suits for malicious use of process such as was brought in the instant case, where special damages have not been suffered, would discourage parties with real grievances against lawyers, doctors, and others from making their complaint for fear of retaliation. If indeed the plaintiffs here have suffered, their suffering is in common with all who have been sued, and their discomfort must yield to the greater public interest of permitting free access to our courts.

I would reverse the lower court and grant summary judgment for appellant.

I am authorized to state that Judge Smith concurs in this dissent and Chief Judge Deen concurs in the judgment only of this dissent.